IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROBERT JOSEPH MORKE,

                                                                OPINION and ORDER

                 Plaintiff,

                                                                10-cv-94-slc[1]

     v.

ARCHER DANIELS MIDLAND CO.,
JOHN JONAS and MIRANDA GERARD,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      In this case, plaintiff Robert Joseph Morke alleges that he was mistreated at his former place of employment when he started complaining about other mistreatment he suffered at the hands of his employer and the supervisors. Plaintiff has asked for leave to proceed without prepayment of fees and I have concluded that he may proceed without any prepayment of fees or costs. In a previous order, I dismissed plaintiff's original complaint for failure to comply with the Federal Rules of Civil Procedure. Now plaintiff has filed a proposed amended complaint in which he attempts to repair the defects I identified in the previous order. As I explain below, the additional information plaintiff has provided is still

---

[1] For the purpose of issuing this order, I am assuming jurisdiction over the case.

1

not enough to allow him to proceed on any retaliation claim. Some claims must be dismissed outright, such as his attempt to sue his supervisors for claims that may be brought only against an employer, and his retaliation claims related to arrest and conviction record discrimination. As for his claims that defendant Archer Daniels Midland Co. retaliated against him for complaining about sex discrimination, disability discrimination and payroll "fraud," plaintiff may have one last chance to add additional allegations to support those claims. He may file a supplement to the amended complaint by April 27, 2010.

From plaintiff's complaint, I draw the following facts.

FACTS

Plaintiff Robert Joseph Morke started working for defendant Archer Daniels Midland Co. as a full-time employee on March 14, 2006. In April 2007, plaintiff was "falsely accused of plotting terrorist and/or murderous acts of violence" against defendant Archer and its employees. Defendant John Jonas, the plant manager, required plaintiff to submit to drug testing, physical evaluation and extended psychotherapy before he was placed on "return-to-duty" status.

On September 14, 2007, plaintiff submitted a grievance to defendant Archer in which he stated: "Grievance #1: Profanity in the workplace, including racially and/or sexually invective epithets. When and or/where in the workplace are profanities and invective

2

epithets condoned?" On that same day, defendant Jonas forced plaintiff to have his hair cut in public to obtain samples for drug testing, "based on [plaintiff's] arrest record." On September 25, 2007, plaintiff was terminated, but he was rehired on October 15, 2007 after it was determined that his termination was a mistake.

On November 6, 2007, defendant Archer reduced plaintiff's "average weekly gross wages by approximately 16%." Plaintiff "decried defendants' conspiracy to commit payroll fraud." At 10:00 a.m. that day, defendant Archer required plaintiff to take a drug test.

On November 13, 2007, plaintiff filed a complaint with the State of Wisconsin Department of Workforce Development Equal Rights Division. In that complaint, plaintiff complained that defendant Archer had required him to submit to drug testing, physical evaluation and "extended psychotherapy" after he returned from vacation time and a funeral leave. In the same complaint, plaintiff alleged that he had been required to submit to defendant Jonas's "publicly cutting [plaintiff's] hair" for drug testing "while amidst the filing of a grievance concerning discrimination and sexual harassment policy in the workplace" and shortly after the drug testing had been terminated. He contended that defendants' actions amounted to retaliation for his opposing discrimination related to his arrest record and his "disability which is perceived mental impairment." At 2:27 a.m. on November 14, 2007, plaintiff told defendants about his complaint. At 11:45 a.m. the same day, defendant Archer required plaintiff to take a drug test. It required another drug test on November 29,

3

2007.

On January 21, 2008, plaintiff told defendants that it was a "glaringly apparent display of compromised confidential information" for them to display an employee's name and social security number on a company bulletin board. On January 23, 2008, plaintiff was required to take hair and urinalysis drug tests. From October 10, 2007 through January 23, 2008, defendants required drug testing of plaintiff nine times. None of the tests were positive.

On March 4, 2008, plaintiff received a letter terminating plaintiff's employment. In the letter, defendant Jonas wrote:

> Over the past several months your insubordination has disrupted the workplace. Co-workers have asked that we reassign you to tasks that keep you isolated. You repeatedly challenge management with complaints. You have been unable to work cooperatively with all fellow employees. Your behavior is a distraction to all of the other employees of this plant. As a result, your employment is terminated effective immediately.

Am. Cpt., dkt. #4, at 22-23. After he was terminated, plaintiff filed a new complaint with the State of Wisconsin Department of Workforce Development Equal Rights Division, alleging retaliation based on his arrest record, conviction record, perceived drug addiction and mental impairment.

4

OPINION

As an initial matter, plaintiff has sued his former employer, Archer, and a couple of his supervisors, defendants John Jonas and Miranda Girard. The individual defendants are entitled to dismissal of the claims. The federal laws that allow an employee to bring employment discrimination and retaliation claims do not authorize suit against other employees, only employers. United States Equal Employment Opportunity Commission v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1281 (7th Cir. 1995). Thus, plaintiff may not pursue claims against his supervisors in their individual capacities. E.g., Williams v. Banning, 72 F.3d 552, 553-554 (7th Cir. 1995); Robinson v. Sappington, 351 F.3d 317, 332 n. 9 (7th Cir. 2003). Instead, he may bring his claims of discrimination only against his former employer, which may be held liable for the acts of supervisors under agency principles.

Therefore, plaintiff may sue only defendant Archer. The next question is, what are his claims? Plaintiff provides a summary of his work history since he was hired at Archer and detailed statements made on Archer's behalf in the context of responding to plaintiff's Equal Employment Opportunity Commission complaints. Plaintiff contends that certain of Archer's disciplinary actions of plaintiff amounted to retaliation for his opposing alleged discrimination and other violations in the workplace. He identifies three types of alleged discrimination that he opposed: (1) discrimination related to his arrest and conviction

record; (2) discrimination related to perceived disabilities, including perceived drug addiction and mental impairment; and (3) sex discrimination, in the form of sexual harassment. In addition, plaintiff contends that he was retaliated against for "decr[ying] payroll fraud.

   A.  Retaliation for Complaining about Arrest and Conviction Record Discrimination

For any employment retaliation claim, the first question to ask is whether the underlying discrimination is statutorily protected under the laws relating to discrimination. E.g., Turner v. The Saloon, Ltd., 595 F.3d 679, 687 (7th Cir. 2010) (under Title VII, retaliation requires evidence of "(1) a statutorily protected activity . . ."); Casna v. City of Loves Park, 574 F.3d 420, 426 (7th Cir. 2009) (statutorily protected activity required to establish retaliation claim under Americans with Disabilities Act). With respect to plaintiff's first type of discrimination, there exists no federal claim for retaliation. Federal law does not protect employees from discrimination for their arrest or conviction records. Because there is no underlying statute protecting employees from this kind of discrimination, plaintiff's claim for retaliation based on his complaints about such discrimination must be dismissed for failure to state a claim upon which relief may be granted. (The same would apply to claims for complaining about "confidential information," but plaintiff does not seem to be pursuing such a claim.)

B.  Retaliation for Complaining about Sex and Disability Discrimination

As for the second and third types of discrimination, each is generally protected under federal law.  Under Title VII, employers may not discriminate against individuals because of their sex.  This prohibition applies to both "discrete acts of discrimination" and the creation of a hostile workplace.  Turner, 595 F.3d at 683 (citations omitted).  Under the Americans with Disabilities Act, or the ADA, an employer may not discriminate against individuals who it "regards" as having a disability, which means an employer may not mistreat an employee that has an impairment that it "mistakenly believes . . . substantially limit[s] a major life activity."  Brunker v. Schwan's Home Service, Inc., 583 F.3d 1004, 1008 (7th Cir. 2009).

Although both sex discrimination and "regarded as" disability discrimination are generally protected, plaintiff has not provided enough factual detail to allow the drawing of an inference that the discrimination he was complaining about fits into either of these categories.  Because plaintiff is seeking leave to proceed on retaliation claims, it is not necessary to establish that he can state a claim for either underlying claim of discrimination, but he needs to allege enough facts about the discrimination to allow an inference that plaintiff could have "reasonably believed in good faith that the practice he opposed violated" Title VII and the ADA.  Tate v. Executive Management Services, Inc., 546 F.3d 528, 532 (7th Cir. 2008).

7

With respect to the sexual harassment, plaintiff states only that he asked in a grievance "when and/or where" "racially and/or sexually invective epithets" were condoned. He fails to allege any facts that would suggest that he or others had been exposed to any such "sexually invective epithets," or more important, that these epithets had created a hostile work environment. Sexual conduct alone does not provide the basis for a sex discrimination claim; the conduct must be sufficiently severe or pervasive to create a hostile work environment. Turner, 595 F.3d at 687.

As for the alleged "regarded as" disability discrimination, plaintiff alleges only that he was regarded as having a mental impairment and was required to undergo psychiatric treatment before returning to work after he was falsely accused of making "terrorist" threats. Under the law, it is not enough to allege that an employer believed plaintiff had some mental impairment; what is required is that the employer believes the impairment "substantially limits a major life activity" such as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." Brunker, 583 F.3d at 1008 (internal quotations and citations omitted).

Plaintiff alleges that Archer sent him to psychological evaluation after accusing him of making threats. These allegations do not suggest that Archer believed plaintiff had a "substantially limiting" impairment, only that defendant thought plaintiff's mental health was affecting his work. Work is considered "substantially limited" only if the worker was

8

"significantly restricted in [his] ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities."  Squibb v. Memorial Medical Center, 497 F.3d 775, 782 (7th Cir. 2007) (quoting 29 C.F.R. § 1630.2(j)(3)(i)).  Nothing suggests that defendant believed plaintiff was "significantly restricted" in this way; Archer's decision to allow him to keep working after psychological treatment suggests the opposite.  Likewise, nothing suggests that Archer believed that plaintiff was "substantially limited" in performing any other major life activity.  Without more allegations, there is no basis for inferring that plaintiff "reasonably believed in good faith" that Archer discriminated against him.

Because the facts in plaintiff's amended complaint do not sufficiently describe the alleged discriminatory acts underlying his retaliation claims or plaintiff's basis for thinking they were discriminatory, they do not permit an inference to be drawn that plaintiff "reasonably believed in good faith" that any of the acts violated federal law when he complained about them.  (Although plaintiff must also allege facts that allow an inference that his complaints are "causally connected" to an adverse employment action, Turner, 595 F.3d at 687; Casna, 574 F.3d at 426, plaintiff does that by pointing to a termination letter stating that he was terminated for his "insubordination" and for "repeatedly challeng[ing] management with complaints.")

Although plaintiff has not pleaded a claim for Title VII or ADA retaliation, I will give

9

him one opportunity to supplement the amended complaint with additional allegations that address the shortcomings I have described above. He may have until April 27, 2010 in which to file the supplement.

### C. Retaliation for "Decrying" Payroll Fraud

Plaintiff's final claim is that defendant retaliated against him for "decrying" the conspiracy to commit payroll fraud against him on November 6, 2007. Under the Fair Labor Standards Act (FLSA), an employer may not discriminate against an employee in retaliation for "fil[ing] and complaint or institut[ing] or caus[ing] to be instituted any proceeding under or related" to the Act, including challenges related to minimum wage and overtime. 29 U.S.C. § 215(a)(3). There are two problems with plaintiff's payroll fraud retaliation claim. First, plaintiff does not describe enough information to determine whether he was complaining about a wage and hour violation covered by the FLSA. The allegation that defendants "slashed" his average weekly gross wages by 16% does not say one way or another whether the reduction in any way violated the requirements of the Act.

Second, plaintiff states only that he "decried" the alleged conspiracy. Under circuit precedent, it matters whether plaintiff "decried" an alleged FLSA violation in writing or orally. As the Court of Appeals for the Seventh Circuit held in Kasten v. Saint-Gobain Performance Plastics Corp., 570 F.3d 834, 838, 840 (7th Cir. 2009), cert. granted, 78

U.S.L.W. 3439 (U.S. March 22, 2010) (No. 09-834), written internal complaints are protected under the act while unwritten complaints are not.  Plaintiff does not explain whether he "decried" the conspiracy in writing.

As with the retaliation claims for Title VII and the ADA, plaintiff fails to plead enough to allow him to proceed on his claim.  As with those claims, he may have an opportunity to supplement his complaint.  Plaintiff may have until April 27, 2010 in which to file a supplement repairing the defects I have identified here.  He should do so in the same supplement that includes allegations supporting his Title VII and ADA claims, if he wants to continue to pursue those claims.

If plaintiff decides to supplement his complaint. he should keep in keep in mind that the allegations he includes should focus on the *facts* that are missing.  In other words, plaintiff should focus on providing more details about what *happened*, including describing in greater detail what defendant did to make plaintiff believe that it was violating Title VII, the ADA or the FLSA and how plaintiff complained about the alleged FLSA violation.

ORDER

IT IS ORDERED that

1.  Plaintiff Robert Joseph Morke's claim that defendants John Jonas and Miranda Gerard retaliated against him is DISMISSED with prejudice for failure to state a claim upon

which relief may be granted and these defendants are DISMISSED from the case.

2.  Plaintiff's claim that defendant Archer Daniels Midland Co. retaliated against him for complaining about his arrest and conviction record is DISMISSED for failure to state a claim upon which relief may be granted.

3.  A decision is stayed on whether plaintiff may proceed on his claims that defendant Archer Daniels Midland Co. retaliated against him for complaining about sexual epithets, a perceived disability and a conspiracy related to his payroll.  Plaintiff may have until April 27, 2010 in which to supplement his complaint to address the defects described in this opinion.

4.  If, by April 27, 2010, plaintiff fails to respond to this order, the clerk of court is directed to close this case for plaintiff's failure to prosecute.  Otherwise, I will take the amended complaint and the supplement under advisement for screening pursuant to 28 U.S.C. § 1915.

Entered this 14th day of April, 2010.

BY THE COURT:

/s/

BARBARA B. CRABB
District Judge