IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ROBERT JOSEPH MORKE,

                                      OPINION and ORDER

         Plaintiff,

                                      10-cv-94-slc[1]

     v.

ARCHER DANIELS MIDLAND CO.,

         Defendant.[2]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     In this employment discrimination and retaliation case, plaintiff has been given two opportunities to amend his complaint to address shortcomings with his pleadings. First, in an order entered March 16, 2010, I dismissed plaintiff's complaint for violating Fed. R. Civ. P. 8, explaining that plaintiff's complaint did not include sufficient detail about the discrimination, defamation and retaliation that plaintiff complained about to give defendants notice of his claims.

     Petitioner filed an amended complaint, but it was not enough. In an order entered

---

[1] For the purpose of issuing this order, I am assuming jurisdiction over the case.

[2] In a previous order, I dismissed plaintiff's claims against John Jonas and Miranda Gerard. I have amended the caption accordingly.

April 14, 2010, certain claims were dismissed for failure to state a claim upon which relief may be granted, but a decision was stayed on whether he could proceed on the three remaining retaliation claims. As I explained in the April 14 order, what was missing from plaintiff's amended complaint was further detail about three things plaintiff complained about: (1) allegedly "sexually invective epithets"; (2) defendant's treatment of plaintiff related to what they regarded as a mental impairment; and (3) problems with plaintiff's pay. Rather than dismiss plaintiff's retaliation claims outright, plaintiff was given an opportunity to supplement his complaint to provide the missing details. Although plaintiff has filed the supplement, it fails to fill in the blanks in a way that supports any of his retaliation claims. Therefore, his remaining claims will be dismissed.

As an initial matter, plaintiff has veered from the court's original instruction that he allege facts as if he were telling a story. (In an order entered March 16, 2010, plaintiff's original complaint was dismissed for failure to comply with Fed. R. Civ. P. 8 and he was given an opportunity to amend his complaint.) In his supplement to the amended complaint, plaintiff mostly strings together block quotes of statements that he and others made in other settings. Many times, it is not clear who is saying what, or whether he is quoting something from before or simply alleging it now. This is made more confusing by the fact that sometimes plaintiff seems to endorse the statements he quotes as fact while other times he seems to disagree with the veracity of the statements.

2

At any rate, viewing the allegations in a light favorable to plaintiff, they fail to support a conclusion that plaintiff's complaints were protected speech under the applicable statutes. First, with respect to plaintiff's concerns about "sexually invective epithets," he does almost nothing to describe them. As I explained in the April 14, 2010 order, to allow an inference to be drawn that his complaints about the epithets were protected (therefore supporting a claim for retaliation), plaintiff had to allege facts suggesting that he could have reasonably believed in good faith that the language was creating a hostile workplace environment in violation of Title VII. Tate v. Executive Management Services, Inc., 546 F.3d 528, 532 (7th Cir. 2008); Turner v. The Saloon, Ltd., 595 F.3d 679, 687 (7th Cir. 2010). Rather than give details about the language, plaintiff chooses to describe the language in extremely vague terms, stating over and over that the language was "vulgar" and "profane." The closest plaintiff comes to describing the workplace environment is to allege that "Gene Ace represented the worst offenders of profane language in the workplace. Gene used the F-word, the S-word and a multitude of sexual epithets on a constant and daily basis." and that "[e]very employee, including plaintiff, used vulgar language in the facility." These allegations do not suggest any sort of good faith basis for thinking the language was sexually discriminatory; allegations that language was sexually charged alone do not generally support a sex discrimination claim. Cf. Holman v. Indiana, 211 F.3d 399, 403 (7th Cir. 2000) (Title VII does not prohibit "equal opportunity" harassment, where both sexes are equally

3

mistreated).

Next, with respect to plaintiff's concerns about defendant regarding him as having a mental impairment, plaintiff points back to the termination letter he quoted in his amended complaint.  In a portion of his supplement titled "deciphering plaintiff's termination letter," plaintiff points to the following passages in the letter:

- "Over the past several months your insubordination has disrupted the workplace."

- "Co-workers have asked that we reassign you tasks that keep you isolated."

- "You have been unable to accept management decisions.  You repeatedly challenge management with complaints."

- "You are unable to work cooperatively with all fellow employees."

- "Your behavior is a distraction to all the other employees of this plant."

Nothing about these statements suggests it would have been reasonable to think defendant "regarded" plaintiff as mentally disabled.  More important, the descriptions in the letter say nothing about why it would have been reasonable to think defendant regarded him as such when plaintiff complained about it, which was well before he received the termination letter.

Finally, with respect to plaintiff's problems with his pay, plaintiff backs away from his earlier allegations related to "slashing" his pay 16%, perhaps because I explained to him that circuit precedent established that only *written* complaints about pay issues are

4

considered "protected" under the FLSA. Kasten v. Saint-Gobain Performance Plastics Corp., 570 F.3d 834, 838, 840 (7th Cir. 2009), cert. granted, 130 S. Ct. 1890 (March 22, 2010) (No. 09-834). The only pay concern he identifies as having been written down prior to the alleged retaliatory act is the statement that defendant was engaged in "payroll manipulation and conspiracy to commit fraud" by shorting plaintiff "32 hours of vacation pay." However, failure to pay vacation hours is not a violation of the FLSA because payments for vacation times "are not regarded as compensation for working." 29 C.F.R. § 778.219. Thus, plaintiff's complaints about denial of vacation pay were not protected under the FLSA and no FLSA-based retaliation claim can arise from them.

Plaintiff's supplement fails to include facts that would support a conclusion that his complaints about "vulgar language," a perceived disability and missing vacation pay were protected under the applicable statutes. Therefore, his claims for retaliation will be dismissed with prejudice for his failure to state a claim upon which relief may be granted.

ORDER

IT IS ORDERED that plaintiff Robert Joseph Morke's claims that defendant Archer Daniels Midland Co. retaliated against him for complaining about sexual epithets, a perceived disability and missing vacation pay are DISMISSED with prejudice for his failure to state a claim upon which relief may be granted. The clerk of court is directed to close the

case.

Entered this 10th day of June, 2010.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge